UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

DOMINICK GIARRATANO,

                  Plaintiff,

    - against -

EDISON HOTEL,

                  Defendant.

---------------------------------------------------------X

**OPINION AND ORDER**

**08 Civ. 1849 (SAS)**

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2/24/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

    Dominick Giarratano brings this action against the Edison Hotel (the "Edison" or the "Hotel") whom he claims discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"),[1] when it terminated his employment in December 2006.[2]  Giarratano was

---

[1]    29 U.S.C. § 621 *et seq.*

[2]    Plaintiff also alleges that he was denied a promotion prior to his termination and that he was denied additional work shifts.  Plaintiff did not, however, exhaust his administrative remedies with respect to these claims as they were not included in the Charge of Discrimination filed with the New York State Division of Human Rights. Accordingly, these unexhausted claims must be dismissed as a matter of law.  *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (stating that exhaustion of administrative remedies – by first presenting claims of discrimination to the applicable administrative agency – is an "essential element" of the ADEA statutory scheme and a precondition to bringing suit in federal court).

terminated with two other security officers, all of whom were in their sixties and among the oldest members of the Edison's security staff.  Defendant claims that all security officers who worked one single weekday shift per week were eliminated in December 2006 as the first step in converting the Edison's Security Department from a large group of part-time employees, who worked varying numbers of shifts per week, to a smaller group of full-time employees, who would work forty hours per week, five days a week.  Giarratano argues that the Edison's stated reason for discharging him is a pretext for age discrimination.  Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that: (1) plaintiff failed to establish a prima facie case of discrimination; and (2) plaintiff failed to show that the legitimate, nondiscriminatory reason proffered by defendant is a pretext for age discrimination.  For the following reasons, defendant's motion is denied.

## I.    FACTS

Giarratano was hired by the Edison in November 1997, when he was fifty-seven years old, to work as a part-time security officer.[3]  As a security officer, Giarratano reported to Andy Valentine, the Security Director who managed the

---

[3]     *See* Defendant's Statement of Uncontested Facts Pursuant to Local Rule 56.1 in Support of Its Motion For Summary Judgment ("Def. 56.1") ¶ 4.

Security Department who, in turn, reported to John Canavan, the General Manager who oversaw all of the Edison's operations.[4] As a part-time security officer, Giarratano worked at least one twelve-hour shift per week.[5] In 1999, Giarratano began working full-time which meant three twelve-hour shifts per week.[6] When Giarratano turned sixty-two in November 2002, he cut back to one shift per week to avoid a reduction in his Social Security earnings.[7]

In July 2005, shortly before he turned sixty-five in November 2005, Giarratano informed Valentine that he wanted to resume working full-time because he would no longer be subject to the Social Security cap on earnings.[8] On several occasions, Giarratano requested that he be assigned a shift given up by a fellow security officer. For example, in April 2006, plaintiff asked Valentine for a

---

[4]     *See id.* ¶¶ 6, 8.

[5]     *See* 8/15/08 Deposition of Dominick Giarratano ("Giarratano Dep."), Ex. B to the Declaration of Robert Jacovetti in Opposition to Defendant's Motion for Summary Judgment ("Jacovetti Decl."), at 51.

[6]     *See id.* at 52.

[7]     *See* Def. 56.1 ¶ 9.

[8]     *See* Giarratano Dep. at 80. Defendant concedes this point in its Statement of Uncontested Facts, where it states: "Plaintiff testified that in 2005, a few months before he turned 65, he advised Andy Valentine that if there were any openings, he would like to return to full-time work." Def. 56.1 ¶ 75.

Friday day shift given up by Patrick Russo.[9]  Russo's shift was given to another security officer, Kevin Burns, who was fifty-eight years old at the time.[10] Giarratano also asked Valentine for a Monday shift given up by Frank Joseph in November 2005.[11]  Valentine again denied this request.[12]  Despite Giaratano's requests for additional shifts, he continued to work one weekday shift per week from November 2002 through December 2006.[13]

In November 2006, the Hotel informed Giarratano, in writing, that he was to be discharged on December 27, 2006.[14]  Valentine informed Giarratano that the Edison was discharging all part-time employees who worked only one weekday shift per week.[15]  In addition to the requests described above, Giarratano once again advised Valentine that he wanted to work full-time but he was told by Valentine that nothing was available.[16]

---

[9]     *See* Def. 56.1 ¶ 76.

[10]    *See id.* ¶ 80.

[11]    *See id.* ¶ 82.

[12]    *See id.* ¶ 83.

[13]    *See id.* ¶ 10.

[14]    *See* Giarratano Dep. at 124.

[15]    *See id.* at 125.

[16]    *See id.* at 126.

In December 2006, Giarratano, Russo and Joseph were discharged from the Edison.[17]  All three security officers worked one weekday shift per week before they were terminated.[18]  Giarratano was sixty-six while Russo and Joseph were sixty-two and sixty-three, respectively, when they were let go.[19]  At the time of their discharge, the Edison retained five other security officers who were in their sixties: Richard Davi (64); Arthur Gormley (61); Robert Spitzer (61); Robery Peyer (60); and Raymond Reilly (60).[20]  Of these five officers, three were terminated on June 30, 2007, one was terminated on August 25, 2007, and one elected to stay on after the restructuring.[21]

According to the Edison, the elimination of security officers who worked one weekday shift per week was the first step in converting its security staff to a full-time schedule.[22]  In early 2006, Canavan decided to convert the

---

[17]    *See* Def. 56.1 ¶ 12.

[18]    *See id.*

[19]    *See id.* ¶¶ 79, 85.

[20]    *See id.* ¶ 43.

[21]    *See* Security Guards Employed in Fall 2006, Ex. M to the Affidavit of Andy Valentine in Support of Defendant's Motion for Summary Judgment ("Valentine Aff.").

[22]    *See* Def. 56.1 ¶ 13.

Edison's Security Department to a full-time staff because he wanted more security coverage in the Hotel and more consistency in the scheduling of security officers.[23] In August 2006, Canavan advised Valentine that he wanted: (1) fewer employees working more regular schedules rather than a large number of part-time employees working various shifts; and (2) more of a security presence in the Hotel.[24]  In a memorandum dated September 1, 2006, Canavan advised Valentine that he wanted most part-time security shifts to be eliminated by December 31, 2006.[25]  Canavan and Valentine ultimately agreed to an exception for Saturday and Sunday part-time personnel because weekend shifts are harder to fill than weekday shifts.[26]  Because of this weekend exception, five security officers who worked one weekend shift per week were not fired in December 2006:  Frank Abbadessa (47); Ferdinand Morales (48); Michael Tischler (49); James Hughes (36); and Michael Yuska (35).[27]  Of these five employees, three were fired on June 30, 2007, one was fired

---

[23]     *See id.* ¶ 19.

[24]     *See id.* ¶ 21.

[25]     *See id.* ¶ 22.

[26]     *See id.* ¶ 24.

[27]     *See id.* ¶ 30.

6

on August 3, 2007, and one elected to stay on after the restructuring.[28]

In March 2007, Canavan circulated a memorandum to all security officers concerning the conversion of the Hotel's Security Department to a five-day, 40-hour per week work schedule.[29]  All security officers were required to complete a form indicating whether they were willing to work full-time.[30]  Many security officers were unwilling to work forty hours, five days per week.[31]  The following employees resigned, effective June 30, 2007: Richard Davi (64); Thomas Bellini (59); Robert Peyer (60): Frank Abbadessa (47); Michael Tischler (49); James Hughes (36); Jose Del Toro (55); Raymond Reilly (60); Kevin Burns (59); Arthur Gormley (61); Michael Yuska (35); John Fitzgibbons (37); and James Gervasi (28).[32]  The Hotel kept the following six security officers: Thomas Ahearn (48); Maurice Ottolia (53); Denis Chabot (56); Ferdinand Morales (49); Fred Baker (60); and Robert Spitzer (62).[33]  The Hotel hired seven new security officers

---

[28]     *See* Ex. M to the Valentine Aff.

[29]     *See* Def. 56.1 ¶ 50.

[30]     *See id.*

[31]     *See id.* ¶ 53.

[32]     *See id.*

[33]     *See* Security Guards Employed in December 2007, Ex. N to the Valentine Aff.

as replacements: Alex Baez (49); Norman Calderon (43); Kurt Schaffner (58); Robert Tebaldi (61); Donald Cycak (58); Benjamin Pride (55); and Michael May (53).[34]  Most, if not all, of these replacements were former policemen or firemen.[35] The net effect of these terminations and new hires is that the Edison's Security Department went from a twenty-two employee staff, eight of whom were age sixty or older, to a thirteen-employee staff, only three of whom were sixty or more years old.[36]  In 2006, more than one-third of the Edison's security staff were sixty years old or older while that percentage dropped to below one quarter in 2007. However, the average age of security officers went from 52.9 in the Fall of 2006 to 54.2 as of December 2007.[37]

At one point in  discussing Valentine's ongoing recruitment efforts, Canavan asked, "Is this a retirement home for cops?"[38]  Apparently, Canavan wanted Valentine to consider sources other than police-related organizations such

---

[34]     *See* Def. 56.1 ¶ 55.

[35]     *See id.* ¶ 56.

[36]     *Compare* Ex. M to the Valentine Aff.. *with* Ex. N to the Valentine Aff.

[37]     *See* Def. 56.1 ¶¶ 72-73.

[38]     *Id.* ¶ 57.

as the Patrolmen's Benevolent Association in recruiting new candidates.[39]  The
official conversion of the Edison's Security Department, to a five-day, forty-hour
work week schedule, was finally accomplished on July 1, 2007.[40]  Since that date,
all security officers work a minimum of forty hours per week, five days per week.
There are no longer any part-time or "fill-in" security officers.[41]

Giarratano filed an administrative Charge of Discrimination with the
New York State Division of Human Rights ("NYSDHR") on December 19,
2006.[42]  Plaintiff subsequently withdrew that Charge, waived any and all claims
under state and local law, and filed the instant action on February 25, 2008.[43]  On
March 7, 2007, a little over two months after plaintiff's termination, Canavan sent
plaintiff a letter offering him full-time employment.[44]  Plaintiff did not accept
Canavan's offer.[45]  On April 2, 2007, during a conciliation conference at the

---

[39]    *See id.*

[40]    *See id.* ¶ 65.

[41]    *See id.*

[42]    *See id.* ¶ 90.

[43]    *See id.* ¶¶ 90-91.

[44]    *See id.* ¶ 51.

[45]    *See id.*

9

NYSDHR, Canavan again made plaintiff an offer of full-time employment which was similarly rejected.[46] Giarratano was eventually re-hired by the Hotel, effective September 28, 2008, on a full-time basis when he was sixty-seven years old.[47]

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[48]  An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[49]  A fact is material when it "'might affect the outcome of the

---

[46]     *See id.* ¶ 59.  Counsel for the Hotel relayed this offer in a letter to Giarratano dated April 2, 2007.  *See id.* ¶ 61.  Plaintiff's attorney rejected the offer in a letter dated April 4, 2007.  *See id.* ¶ 62.  The Hotel's offer of full-time employment was repeated in a letter dated April 5, 2007, which plaintiff again rejected.  *See id.* ¶ 64.

[47]     *See id.* ¶ 70.

[48]     Fed. R. Civ. P. 56(c).

[49]     *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

suit under the governing law.'"[50]  "It is the movant's burden to show that no genuine factual dispute exists."[51]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[52]  To do so, the non-moving party must do more than show that there is "'some  metaphysical doubt as to the material facts,'"[53] and it "'may not rely on conclusory allegations or unsubstantiated

---

[50]    *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

[51]    *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[52]    *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation omitted).

[53]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

11

speculation.'"[54]  However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[55]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[56]  However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[57]  Summary judgment is therefore "only appropriate when there is no genuine issue as to any material fact, making judgment appropriate as a matter of law."[58]

---

[54]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[55]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[56]    *See Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir.2005)).

[57]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[58]    *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

"'It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"[59] "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination."[60] Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"[61]

However, greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue and circumstantial evidence may reveal an inference of discrimination.[62] This is so because "'[e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly

_____

[59]    *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)). *Accord Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("the salutary purposes of summary judgment– avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation.").

[60]    *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. Civ.3:02CV1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004) (quotation marks and citation omitted).

[61]    *Feingold v. New* York, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson*, 239 F.3d at 466) (alteration in original).

[62]    *See id.*

13

forbidden by law.'"⁶³ But "'[e]ven in the discrimination context, a plaintiff must

prove more than conclusory allegations of discrimination to defeat a motion for

summary judgment.'"⁶⁴ "'[M]ere conclusory allegations, speculation or

conjecture will not avail a party resisting summary judgment.'"⁶⁵

## B.    Age Discrimination

Under the ADEA, it is "unlawful for an employer . . . to discharge any

individual or otherwise discriminate against any individual . . . because of such

individual's age."⁶⁶ The statute protects the class of people who are forty

years-old or older.⁶⁷ "To withstand a motion for summary judgment, a

---

⁶³    *Sadki v. SUNY Coll. at Brockport*, 310 F. Supp. 2d 506, 515
(W.D.N.Y. 2004) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir.
1999) (quotation marks and citation omitted, alteration in original)).

⁶⁴    *Flakowicz v. Raffi Custom Photo Lab, Inc.*, No. 02 Civ. 9558, 2004
WL 2049220, at *8 (S.D.N.Y. Sept. 13, 2004) (quoting *Schwapp v. Town of Avon*,
118 F.3d 106, 110 (2d Cir. 1997)).

⁶⁵    *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d
Cir. 2003) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)
(alteration in original)). *Accord Cameron v. Community Aid for Retarded
Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("'[P]urely conclusory allegations
of discrimination, absent any concrete particulars,' are insufficient" to satisfy an
employee's burden on a motion for summary judgment.) (quoting *Meiri*, 759 F.2d
at 998) (alteration in original).

⁶⁶    29 U.S.C. § 623(a)(1).

⁶⁷    *See id.* § 631.

14

discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*."[68]   "[T]he initial burden rests with the plaintiff to establish a prima facie case of discrimination."[69]  A plaintiff meets this burden by showing that: (1) he falls within the protected group; (2) he was qualified for the position he held; (3) he was subject to an adverse employment action; and (4)  the adverse employment action was taken under circumstances giving rise to an inference of unlawful discrimination.[70]  The Second Circuit has "characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimis.'"[71]

Once a plaintiff establises a prima facie case, a rebuttable presumption of unlawful discrimination arises and the burden of production shifts to the employer to proffer a "legitimate, nondiscriminatory reason" for the

---

[68]     *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005) (applying *McDonnell Douglas* framework to age discrimination claim)).

[69]     *Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005).

[70]     *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003); *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

[71]     *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).  *Accord Woodman*, 411 F.3d at 76.

challenged employment action.[72]  "If the defendant articulates such a reason, 'the presumption of discrimination drops out,' and the plaintiff must 'prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"[73]  At this final stage of analysis, courts must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"[74]  In other words, plaintiff is left with the final burden of proving that his age "'was the real reason' for any adverse employment action."[75]  Direct evidence is not required; circumstantial evidence will suffice.[76]

## III.   DISCUSSION

### A.   Plaintiff Has Established a Prima Facie Case of Age Discrimination

Giarratano has satisfied the first and second elements required to

---

[72]   *Woodman*, 411 F.3d at 76.

[73]   *Id.* (quoting *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001)).

[74]   *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)).

[75]   *Cross*, 417 F.3d at 248 (quoting *Schnabel*, 232 F.3d at 87).

[76]   *See Norton v. Sam's Club*, 145 F3d 114, 119 (2d Cir. 1998).

establish a prima facie case of age discrimination because he was sixty-six years old when he was terminated from a position he held for nine years.[77]  Nor can it be disputed that Giarratano suffered an adverse employment action when he was discharged in December 2006.  Thus, the only question is whether plaintiff has offered evidence showing that this action was taken under circumstances giving rise to an inference of age discrimination.  This Court finds that plaintiff has made this showing.  Plaintiff was discharged with two other security officers, both of whom were in their sixties.  The three of them were among the oldest members of the Edison's Security Department.  Giarratano, who was sixty-six years old when he was fired, was the oldest member of the Hotel's security staff, followed by Richard Davi, age sixty-four, who was terminated on June 30, 2007.  In the months preceding Giarratano's termination, the Hotel hired two substantially younger security officers as "fill-in"[78] employees: John Fitzgibbons, age 37, was hired on September 8, 2006; and James Gervasi, age 28, was hired on November

---

[77]     *See* Giarratano Dep. at 48.  During his entire tenure with the Edison, Giarratano received no disciplinary warnings and performed his duties in an exemplary manner.  *See* Affidavit of Dominick Giarratano, Ex. A to the Jacovetti Decl., ¶ 11.

[78]     "Fill-in" employees work for other security officers as needed, they do not work regular shifts, and they are not considered part of the regular staff due to the occasional nature of their assignments.  *See* Def. 56.1 ¶ 25.

17

4, 2006.[79]   As a result, the percentage of the Edison's security staff who were

sixty years old or older dropped from more than one-third in 2006 to less than one

quarter in 2007.  Although none of these facts is dispositive on its own, in

combination they support the conclusion that the Edison discharged Giarratano

under circumstances giving rise to an inference of discrimination.  Giarratano has

therefore established a prima facie case of age discrimination.

## B.      Plaintiff Has Shown that Defendant's Legitimate, Nondiscriminatory Reason is Pretextual

The Edison has articulated a legitimate, nondiscriminatory reason for

terminating Giarratano: all single weekday security shifts were eliminated in

December 2006, as the first step in converting the Security Department from a

large group of part-time and "per diem" staff to a smaller, full-time staff (forty

hours per week, five days per week).  In his opposition papers, Giarratano argues

that the Edison's stated reason for terminating him is false because the Hotel

continued to employ part-time security officers who worked only one weekday

shift per week.[80]  Defendant's response is that no security officer was regularly

---

[79]     *See* Ex. O to the Jacovetti Decl. (list of employees' names, ages, and dates of hire).

[80]     *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 11 ("Although Valentine told Plaintiff that he was being discharged because he worked only one shift per week, Defendant continued to

18

assigned to work single weekday shifts afer the December 2006 layoff.[81]  In support of this position, defendant has excerpted the relevant time records which show that only five "fill-in" or "casual" security officers – including two "fill-ins" who are in their sixties – occasionally worked weekday shifts on a sporadic basis.[82]  According to the Edison, "fill-in" positions were not eliminated as of December 2006, although they were eliminated as of July 1, 2007.  Thus, it would appear that plaintiff has failed to rebut defendant's legitimate, nondiscriminatory reason as pretextual.

However, although plaintiff did not expressly raise the argument, there is another ground which may rebut defendant's legitimate, nondiscriminatory reason.  Despite Giarratano's repeated requests, Valentine refused to give him additional shifts prior to his termination.  The stated ground for Giarratano's discharge is that he worked only one weekday shift per week.  But if Giarratano had been given the two additional shifts he previously requested, he would have

---

employ security officers who worked only one shift per week. . . .  During the fourteen week period after [plaintiff's] termination, Defendant retained part-time security officers who continued to work one shift per week Monday through Friday.").

[81]     *See* Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 6.

[82]     *See id.* at 5-6.

been a full-time employee exempt from the restructuring. Prior to his termination,
Giarratano had asked Valentine to make him a full-time employee, a request which
Valentine denied. Then, in March and April 2007, the Edison changed course and
offered Giarratano full-time employment. The fact that the Edison terminated
Giarratano because he was not a full-time employee, after Giarratano's request to
become a full-time employee was denied, raises a material issue of fact regarding
the veracity of defendant's proffered reason. Thus, the Edison's reliance on its
stated termination criteria – security officers who work only one weekday shift per
week – is misplaced where the Edison prevented Giarratano from working full-
time by intentionally denying him additional shifts.

        In addition, there may be direct evidence of discriminatory animus on
the part of the Edison. During the Spring of 2007, while Valentine was recruiting
new security officers in connection with the reorganization of the Security
Department, Canavan asked, "Is this a retirement home for cops?" Defendant
argues that this comment had nothing to do with age because Canavan knew that
policemen can retire while they are still relatively young. Defendant further
argues that this stray remark, by itself, is not sufficient to make plaintiff's case.
Whether Canavan's remark was indeed stray, and the weight it should be given,
are determinations a jury should make.

For example, in *Danzer v. Norden Systems, Inc.*,[83] the defendant

attempted to discount a stray remark by relying on *Woroski v. Nashua

Corporation*[84] a case in which the Second Circuit concluded that "stray remarks,

even if made by a decisionmaker, do not constitute sufficient evidence to make out

a case of employment discrimination."[85]  The Second Circuit qualified its holding

in *Woroski* with the following:

> But all that *Woroski* holds is that such comments, *without
> more*, cannot get a discrimination suit to a jury. (If it were
> otherwise, disparaged workers who had the "fortuity" of
> being in the class encompassed by the stray remark would
> have an instantaneous jury case on discrimination,
> regardless of the ground for their dismissal.)   When,
> however, . . . other indicia of discrimination are properly
> presented, the remarks can no longer be deemed "stray,"
> and the jury has a right to conclude that they bear a more
> ominous significance.[86]

Thus, whether Canavan's post-termination, age-related comment can raise an

inference of discrimination or establish pretext will depend on whether plaintiff

can show: additional evidence of discrimination; or a nexus between the remark

---

[83]    151 F.3d 50, 56 (2d Cir. 1998).

[84]    31 F.3d 105, 109-10 (2d Cir. 1994).

[85]    *Danzer*, 151 F.3d at 56.

[86]    *Id.* (emphasis in original).

21

and the adverse employment action in issue.[87]

In any event, according to the Supreme Court, a discrimination case may survive, in some circumstances, where there is only a prima facie case plus a showing of pretext.

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

> This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.  *See Aka v. Washington Hospital Center*, 156 F.3d, at 1291-1292; *see also Fisher v. Vassar College*, 114 F.3d, at 1338 ("[I]f the circumstances show that the defendant gave the false

---

[87]     *See Hansberry v. Father Flanagan's Boys' Home*, No. CV-03-3006, 2004 WL 3152393, at *5 (E.D.N.Y. Nov. 28, 2004) ("In deciding whether this nexus is established, a court should consider whether the person who made the remarks had some connection to the employment decision, when the remarks were made in relation to the employment decision, and the context and content of the remarks.").

> explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent"). To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'" *St. Mary's Honor Center, supra*, at 524, (quoting *Aikens*, 460 U.S., at 716).

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law. . . . It suffices to say that, because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination.[88]

Under the circumstances presented here, plaintiff has offered sufficient evidence from which a finder of fact could conclude that defendant's alleged reason for the termination was merely a pretext and that the real reason for plaintiff's termination was unlawful age discrimination. Defendant's motion for summary judgment is therefore denied.

---

[88]     *Reeves*, 530 U.S. at 148-49 (parallel citations omitted).

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment

is denied.  The Clerk of the Court is directed to close this motion (Document #

18).  A status conference is scheduled for March 5, 2009, at 4:00 p.m., in

Courtroom 15C.


SO ORDERED:


Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            February 24, 2009

24

## - Appearances -

**For Plaintiff:**

Robert C. Jacovetti, Esq.
Frank & Associates, P.C.
500 Bi-County Boulevard, Suite 112N
Farmingdale, NY 11735
(631) 756-0400

**For Defendant:**

Kathryn J. Russo, Esq.
Jackson Lewis LLP
58 South Service Road, Suite 410
Melville, NY 11747
(631) 247-0404